**Joseph LAROCK, Cinda Larock, Danna and Mary Louise Larock Burke**

v.

### SUGARLOAF TOWNSHIP ZONING HEARING BOARD.

**Jeannette Levan, Thomas Pimble, Sherry A. Chest, Doug Fisher and Residents Against Sugarloaf Quarry, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1999.
Decided Nov. 4, 1999.

Charles R. Pedri, Hazleton, for appellants.

Conrad A. Falvello, Sugarloaf, for appellees.

William J. Schneider, Hazleton, for appellee, Sugarloaf Township.

Before SMITH, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Jeannette Levan, Thomas Pimble, Sherry A. Chest, Doug Fisher, (Residents) and Residents Against Sugarloaf Quarry (RASQ) (collectively, Appellants) appeal from the March 9, 1999 order of the Court of Common Pleas of Luzerne County (trial court) that denied their petitions to intervene in the zoning appeals of Joseph Larock, Cinda Larock Danna, and Mary Louise Larock Burke (collectively, the Larocks). For the reasons that follow, we affirm in part and reverse in part.

On May 5, 1998, the Larocks filed an application for a change in use permit with the Sugarloaf Township (Township) zoning officer requesting permission to operate a stone quarry on their 235-acre parcel of land. The zoning officer denied the application on the basis that the proposed use was a commercial venture that required a variance approved by the Township Zoning Board (Zoning Board).

Accordingly, the Larocks appealed to the Zoning Board. By decision dated June 10, 1998,[1] the Zoning Board denied the Larocks' request for a variance.

Thereafter, on July 9, 1998, the Larocks filed a notice of appeal from the denial of their request for a variance with the trial court (variance appeal). On July 30 and September 28, 1998, respectively, Appellants filed a notice of intervention and a motion to inspect property. The Larocks then filed preliminary objections to the notice of intervention and the motion to inspect property.

At the same time that the variance appeal was pending, the Larocks filed a petition for a curative amendment with the Township Board of Supervisors (Supervisors).[2] The curative amendment challenged the validity of the Township Zoning Ordinance and sought a change in zoning from the then existing classification.

On September 23, 1998, the Zoning Board likewise denied the Larocks' peti-

---

1. The Zoning Board held a hearing on the Larocks' request for a variance on June 8, 1998, at which time Appellants appeared and testified. All copies of the Zoning Board's findings of facts and conclusions of law in the original and reproduced records do not indicate the exact date that the Zoning Board entered its decision on the Larocks' request for a variance. However, in their zoning appeal to the trial court, the Larocks aver that the Zoning Board denied their request for a variance on June 10, 1998. See Original Record of the Court of Common Pleas of Luzerne County, docket number 4286–C of 1998, Item No. 1.

2. A person who is aggrieved by a zoning ordinance and wishes to seek a curative amendment must submit plans and explanatory materials to the zoning board that describe the proposed use or development of the property in lieu of the existing use or development permitted by the challenged ordinance. See Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1.

tion for a curative amendment. The Larocks again appealed to the trial court (curative amendment appeal).[3] On November 24, 1998, Appellants filed a petition to intervene in the curative amendment appeal. The Larocks filed an answer to the petition to intervene on November 28, 1998, and on December 8, 1998, the Supervisors filed an answer to the Larocks' petition for a curative amendment.

█ At a hearing held January 13, 1999, the trial court heard testimony on the petitions to intervene in both the variance and curative amendment appeals. By order dated March 9, 1999, the trial court denied the petitions to intervene.[4] This appeal followed.[5]

█ We begin by noting that Pennsylvania Rule of Appellate Procedure 341 provides that an appeal may be taken as of right from any final order of an administrative agency or lower court.[6] Pa. R.A.P. 341. A final order is defined as any order that (1) disposes of all claims and of all the parties, (2) any order that is expressly defined as a final order by statute or (3), any order entered pursuant to subdivision (c) of Rule 341. Pa. R.A.P. 341(b). Subsection (c) provides, in pertinent part, that

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all

of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa. R.A.P. 341(c).

The Official Note to Rule 341 explains that an order denying a petitioner the right to intervene no longer may be deemed a final order within the meaning of Rule 341, following the 1992 amendments to that Rule. The Note further states that, in appropriate cases, such an order might fall under Pa. R.A.P. 312 (relating to interlocutory appeals by permission) or Pa. R.A.P. 313 (relating to collateral orders). *Cogan v. County of Beaver,* 690 A.2d 763 (Pa.Cmwlth.), *appeal denied,* 548 Pa. 661, 698 A.2d 68 (1997); *see also* 1 G. Ronald Darlington, et al., Pennsylvania Appellate Practice, § 313.19.3 (2d ed.1998).

█ Rule 312 permits an appeal from an interlocutory order by permission of the appellate court. Pa. R.A.P. 312. In the matter before us, Appellants did not follow any of the rules for securing an appeal by permission as set forth in Rule 312. Thus, we must determine whether the trial court's order denying intervention is a collateral order under Rule 313. *See Cogan.*

A "collateral order" is defined as

---

**3.** *See* Original Record of the Court of Common Pleas of Luzerne County, docket number 6780–C of 1998.

**4.** Although the Larocks filed separate appeals from the denial of their request for a variance and the denial of their petition for a curative amendment and Appellants sought to intervene in both appeals, the trial court issued only one order disposing of the petitions to intervene.

**5.** On review, we are limited to determining whether the trial court abused its discretion or committed an error of law. *Acorn Dev. Corp. v. Zoning Hearing Board of Upper Mer-*

*ion Township,* 105 Pa.Cmwlth. 138, 523 A.2d 436 (1987).

**6.** The parties have not addressed the issue of appealability of the trial court's order in their briefs to this Court. However, by legislative and judicial mandate, this Court is required to determine whether the order appealed from is final. "Since the question of appealability implicates the jurisdiction of the appellate court, a non-waivable matter, the failure of the parties to raise the issue does not preclude this Court from doing so *sua sponte.*" *Robinson v. City of Philadelphia,* 706 A.2d 1295, 1297 (Pa.Cmwlth.1998).

an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313(b).

In *Strain v. Simpson House,* 690 A.2d 785, 787 (Pa.Cmwlth.1997), we noted that "[t]he requirements to be satisfied to bring an appeal under the collateral order doctrine are stringent and must be narrowly construed." In addition, we stated that, generally "in determining whether an order is separable from and collateral to the main cause of action, the court must decide whether the claimed rights affected by the order are also ingredients of the main cause of action." *Id.* at 787. Presently, without question, Appellants' right to intervene is separable from and collateral to the underlying actions.

In *Cogan,* we further noted that "the merits of the petition to intervene necessarily are considered as part of the analysis to determine whether the claim asserted is 'too important to be denied review,'" but that "the mere assertion of a right to intervene is not per se too important to be denied review." *Cogan,* 690 A.2d at 765. Our Supreme Court recently clarified this prong of the collateral order doctrine in *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209 (1999). In *Geniviva,* the Supreme Court held that

> [f]or purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand.

*Id.* at 598, 725 A.2d at 1214.

■ Every person has the right to the natural, proper, and profitable use of his or her own land. *Reinhart v. Lancaster Area Refuse Auth.,* 201 Pa.Super. 614, 193 A.2d 670 (1963). Implicit then is the right to protect one's property from harm, whether it be in the form of decreased valuation, insufficient water supply, excessive dust, noise, pollution, or some other cause. Indeed, the Eminent Domain Code [7] provides for just compensation in instances where a condemnor causes a decrease in property value.

When the property at issue is someone's home, the owner's right to protect the viability of his property is even more personal. The purchase of a home is often considered to be one of, if not the, most significant investments an individual can make during his lifetime. To deny an individual the right to protect his interest in the property he calls home would violate public policy. Accordingly, based upon the facts before us, we conclude that the trial court's order denying intervention is a collateral order subject to appeal pursuant to Pa. R.A.P. 313.[8]

Having concluded that the trial court's order is subject to appeal, we now address the merits of Appellants' appeal. Here, the trial court's reason for denying Appellants' petitions to intervene was that the Township and Zoning Board adequately represented their interest.

Petitions to intervene are governed by Pennsylvania Rules of Civil Procedure 2326–2350. Pa. R.C.P. No. 2327 denotes four categories of persons who may intervene in an action, including any person who has "any legally enforceable interest" that may be affected by a judgment in the action. Pa. R.C.P. No. 2327(4). Rule 2329 requires that a hearing be held and that the court, if the allegations of the petition have been established, enter an order allowing intervention. Pa. R.C.P. No. 2329. A petition to intervene may, however, be refused if

---

**7.** Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903.

**8.** For the reasons discussed *infra,* we also conclude that Residents satisfied the third prong of the collateral order doctrine.

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa. R.C.P. No. 2329.

■ Considering Rules 2327 and 2329 together, the effect of Rule 2329 is that if the petitioner is a person within one of the classes described in Rule 2327, the allowance of intervention is mandatory, not discretionary, unless one of the grounds for refusal under Rule 2329 is present. Equally, if the petitioner does not show himself to be within one of the four classes described in Rule 2327, intervention must be denied, irrespective of whether any of the grounds for refusal in Rule 2329 exist. *See In re Pennsylvania Crime Comm'n,* 453 Pa. 513, 524 n. 11, 309 A.2d 401, 408 n. 11 (1973); 7 Goodrich Amram 2d *Intervention* § 2329:3 (1992). Thus, the court is given the discretion to allow or to refuse intervention only where the petitioner falls within one of the classes enumerated in Rule 2327 *and* only where one of the grounds under Rule 2329 is present which authorizes the refusal of intervention.

■ In *Summit Township Taxpayers Ass'n v. Summit Township Board of Supervisors,* 49 Pa.Cmwlth. 459, 411 A.2d 1263, 1265 (1980), this Court recognized that "[o]wners of property in the immediate vicinity of property involved in zoning litigation have the requisite interest and status to become intervenors under Pa. R.C.P. No. 2327(4)." *See also Esso Standard Oil Co. v. Taylor,* 399 Pa. 324, 159 A.2d 692 (1960); *Keener v. Zoning Hearing Board of Millcreek Township,* 714 A.2d 1120 (Pa.Cmwlth.1998); *Schatz v. Upper Dublin Township Zoning Hearing Board,* 21 Pa.Cmwlth. 112, 343 A.2d 90 (1975). Accordingly, Residents, by virtue of their status as property owners in the immediate vicinity of the proposed quarry, have a "legally enforceable interest" under Pa. R.C.P. No. 2327(4).

■ The same cannot be said, however, of RASQ. RASQ is a Pennsylvania corporation whose membership includes residents of the townships and counties near Sugarloaf Township and Luzerne County, but not located therein. RASQ, as a corporation, does not own any property in the immediate vicinity of the Larocks' proposed quarry or in Luzerne County.

In *Acorn Dev. Corp. v. Zoning Hearing Board of Upper Merion Township,* 105 Pa.Cmwlth. 138, 523 A.2d 436 (1987), the Upper Merion Concerned Citizens Committee, Inc. (committee) was represented by counsel and participated in Acorn's rezoning application before the Upper Merion Township Zoning Hearing Board (zoning board). Acorn proposed to convert a golf course into office and hotel space. The zoning board denied Acorn's application, and Acorn appealed to the court of common pleas. The committee sought to intervene in the appeal; however, the court of common pleas denied its petition.

On appeal to this Court, the committee argued that it had a legally enforceable interest under Pa. R.C.P. No. 2327(4) and Section 908(3) of the MPC, 53 P.S. § 10908(3). In affirming the court of common pleas, we stated that

[t]o satisfy Rule 2327(4), "the applicant must own an interest in or a lien upon property in question or must own a cause of action which will be affected by the action. He must have some right, whether legal or equitable, which will be affected by the proceedings." 8 Goodrich–Amram 2d § 2327:7.

In the instant case, there is no evidence in the record that the Committee owns property in the vicinity of the Valley Forge Golf Course. The Committee contends that if Acorn is successful in its challenge to the zoning ordinance, and the proposed development is approved, residents throughout the township will

be affected. However, we do not believe that the potentially pervasive effect on township residents is a legally enforceable interest. The Committee's interest is an interest shared by the community, and is not sufficient to satisfy Rule 2327(4).

*Id.* at 437–438.

Jeannette Levan, president of RASQ, testified that the corporation does not own any property in the Township. (Reproduced Record "R.R." 44–A, p. 26).[9] Accordingly, under *Acorn,* RASQ does not have a legally enforceable interest under Pa. R.C.P. No. 2327(4). We therefore conclude that the trial court properly denied the petitions to intervene with respect to RASQ.[10]

■ Our analysis, however, does not end here. Since the Residents fall within one of the classes of persons permitted to intervene under Pa. R.C.P. No. 2327(4), we must determine whether the trial court erred in concluding that under Pa. R.C.P. No. 2329(2), the Residents' interests are adequately represented by the Zoning Board and the Township. "Even if there is a legally enforceable interest under Rule 2327(4), a mere prima facie basis for intervention is not enough and intervention may be denied if the interest of the petitioner is already adequately represented." *Keener,* 714 A.2d at 1123.

■ In their briefs to this Court and at oral argument, the Township and Zoning Board emphasized that their interest in the proposed quarry may diverge from that of the Residents. We agree. Therefore, we conclude that the Residents' have satisfied the third prong of the collateral order doctrine, that the claims would be irreparably lost if review is postponed until final judgment on the Larocks' variance and curative amendment appeals.

The Residents' goal is to prohibit the quarry entirely. Conversely, the Zoning

Board's and the Township's goals are to protect the interests of the Township, which may at some point include settlement of the matter that would allow the quarry. Indeed, at oral argument, Counsel for the Township indicated that it is not necessarily opposed to the quarry. In fact, Counsel alluded to the possibility that the Township might consider settling the case by permitting the quarry, albeit with conditions. In other words, if it is possibly only a matter of time until the quarry comes in anyway, it would be in the Township's interest to have an opportunity to impose conditions favorable to the Township. Since the Township does not unequivocally share the Residents' interest in totally precluding the quarry, we conclude that the trial court erred when it denied the Residents' petitions to intervene.

Based upon the foregoing, the order of the trial court is affirmed wherein it denied the petitions to intervene with respect to RASQ and is reversed wherein it denied the petitions to intervene with respect to the Residents.

### ORDER

AND NOW, this 4th day of November, 1999, it is hereby ordered that the March 9, 1999 order of the Court of Common Pleas of Luzerne County is affirmed in part and reversed in part. The order is affirmed to the extent that it denied the petition to intervene with respect to the Residents Against Sugarloaf Quarry and is reversed to the extent that it denied the petition to intervene with respect to Jeannette Levan, Thomas Pimble, Sherry A. Chest, and Doug Fisher.

Judge SMITH concurs in the result only.

---

**9.** The trial court transcript dated January 13, 1999 is a multi-page transcript.

**10.** Even though Mrs. Levan owns property in the immediate vicinity of the proposed quar-

ry, her status as president does not cause the corporation to have a legally enforceable interest.