# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D. G. A., R.D.A.M., G. C. G., R. N. and  :
Aldea-The People's Justice Center,    :
                 Petitioners  :
                                 :
           v.               :   No. 1059 C.D. 2018
                                   :   ARGUED: November 12, 2019
Department of Human Services,     :
                 Respondent  :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED: January 21, 2020**


        D. G. A., R.D.A.M., G. C. G., R. N. (Detainees) and Aldea-The People's Justice Center (Aldea), (collectively, Petitioners), petition for review of a July 2018 order of the Department of Human Services (DHS), Bureau of Hearings and Appeals (Bureau), denying their petition to intervene in DHS's action seeking to revoke the license of the Berks County (Berks County) Residential Center (Center).[1] In addition, we consider the potential mootness of the petition for review based on Petitioners' acknowledgment that Detainees no longer reside at the Center and the appealability of DHS's order denying the petition to intervene.[2] We conclude

---

    [1] In April 2019, DHS indicated that it would not be filing a brief or participating at oral argument.

    [2] In August 2018, we directed the parties in their principal briefs to address the appealability of DHS's order. In September 2019, we directed them to file memoranda of law addressing whether Petitioners' claims were moot.

that the order is appealable, that the petition for review is not moot, and that the Bureau erred in denying the petition to intervene. Accordingly, we reverse the Bureau's order and remand this matter to the Bureau with directions to permit Petitioners to intervene.

The relevant background is as follows. In 2001, Berks County signed an intergovernmental service agreement with the Department of Homeland Security, Immigration Customs Enforcement (ICE), to operate the Center. Subsequently, DHS licensed the Center to operate as a Child Residential and Treatment Facility (child residential facility) pursuant to the regulations found at 55 Pa. Code §§ 3800.1-3800.312.[3] The purpose of these regulations "is to protect the health, safety and well-being of children receiving care in a child residential facility through the formulation, application and enforcement of minimum licensing requirements." 55 Pa. Code § 3800.1. To that end, a child residential facility must obtain and maintain a certificate of compliance (certificate) from DHS. 55 Pa. Code § 3800.11. A "certificate of compliance" is a "document issued to a legal entity permitting it to operate a *specific* type of facility or agency, at a given location, for a specified period of time, and according to *appropriate* Departmental program license or approval regulations." 55 Pa. Code § 20.4 (emphasis added).

Notwithstanding the Center's licensure as a child residential facility, it is one of three immigration detention facilities in the United States that provides residential family housing to undocumented immigrant families seeking asylum while ICE enforces federal immigration laws. Consequently, Petitioners include

---

[3] These regulations govern child residential facilities and cover subjects such as child rights, staff training, the safety of the facility, child and staff health, transportation, medication, restrictive procedures, and secure detention.

2

Detainees, children *and* adults formerly housed at the Center.[4]   In addition, Petitioners include Aldea, a nonprofit organization based in Reading, Pennsylvania, that assists detainees.[5]

In general, DHS renewed the Center's license from 2001 to 2015.  More specifically, when the Center moved to a new location in 2013, it relinquished the existing certificate and applied for a new one.  In February 2013, DHS granted the certificate for the new location.  Thereafter, Berks County renovated part of the Center and sought to increase the capacity.  In October 2015, DHS advised that it was postponing a decision on the Center's request to increase the capacity.  In November 2015, the Center submitted its application for renewal of its certificate for 2016-17.  Although DHS initially granted the renewal application and issued a certificate, DHS subsequently issued a November 2015 letter "rescinding" its actions.  In January 2016, DHS advised the Center of the decision to revoke the

---

[4] According to the petition for review, Detainees include the following:

> 3. Child D.G.A. is a citizen of Guatemala.  He and his father were detained at [the Center] beginning on February 24, 2018, and have since been released.

> 4. Child R.D.A.M. is a citizen of Honduras.  She and her father were detained at [the Center] beginning on April 2, 2018, and have since been released.

> 5. Ms. G.C.G. is a citizen of Honduras.  She and her then five-year-old daughter were detained [at the Center] from October 21, 2015, until January 28, 2017. . . .

> 6. Ms. R.N. is a citizen of Honduras.  She and her fifteen-year-old son were detained [at the Center] from early April 2014 until May 15, 2015.

(Aug. 2, 2018, Petition for Review, ¶¶ 3-6.)

[5] According to the petition for review, Aldea's "volunteer attorneys and advocates have represented more than 700 individuals at [the Center] since 2015, as well as the approximately 35 currently detained families, in their asylum and immigration proceedings *pro bono*."  (*Id.*, ¶7.)

certificate for 2016-17 and to deny the request to increase capacity. DHS based its decision on "a determination that [the Center] was not operating as a child residential facility under [DHS's] regulations, but rather . . . operating as a residential center for the detention of immigrant families including adults." (Bureau's April 5, 2016, Order Denying March 11, 2016, Petition to Intervene, Finding of Fact "F.F." No. 3; Supplemental Reproduced Record "S.R.R." at 154.)[6]

In February 2016, the Center appealed. Although the Bureau held a November 2016 hearing, the appeal remained pending. Consequently, Berks County filed a January 2017 petition for review in the nature of mandamus and special relief against the Secretary of DHS and DHS in this Court's original jurisdiction at No. 8 M.D. 2017 seeking an order from this Court (1) compelling DHS to respond to the Center's application for a 2016-17 certificate; and (2) directing that DHS be precluded from taking action against the Center thereby maintaining the status quo of its current certificate pending the outcome of this matter and any appeals. Subsequently, Senior Judge Leadbetter held a status conference after which a February 3, 2017, document styled "stipulation and order" was entered permitting the Center to continue operating despite the imminent February 2017 expiration of its certificate for purposes of maintaining the status quo during the pendency of the

---

[6] In the March 2016 petition to intervene, then petitioners alleged that they were parents and children currently or recently confined at the Center. As in the present matter, the issue was whether the Center was operating as a child residential facility or as a residential center for the detention of immigrant families. In denying intervention, the Bureau concluded that DHS as the agency responsible for administering state licensing requirements adequately represented the petitioners' interest. In addition, even though the Bureau acknowledged that the purpose of the licensure regulations for child residential facilities was to protect children at such facilities, it determined that petitioners' participation was not necessary to effectuate that public interest scheme, that DHS best represented the public's interest, and that petitioners failed to show how their participation would further ensure that public interest. (Bureau's April 5, 2016, Order Denying March 11, 2016, Petition to Intervene at 2-3; S.R.R. at 155-56.)

4

appeal of the license revocation before the Bureau (Case No. 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) and the mandamus action before this Court (No. 8 M.D. 2017).

In April 2017, an administrative law judge (ALJ) sustained the Center's appeal of the revocation of the 2016-17 license. DHS filed an application for reconsideration, which was granted. In January 2018, DHS entered an order setting aside the decision and remanding the appeal for issuance of a new adjudication with the option of reopening the hearing record or adjudicating based on the existing record. The Center requested reconsideration, which was denied in March 2018. Subsequently, the Bureau ordered the parties to file briefs addressing the January 2018 remand order by July 2, 2018, with reply briefs due July 17, 2018.

In July 2018, an ALJ entered the decision at issue denying Petitioners' motion for extension of time to file a brief in support of their petition to intervene, concluding that the petition was deemed denied pursuant to Bureau Standing Order 14(b) because the Bureau did not issue a decision on the petition within thirty days. In August 2018, Petitioners filed the present petition for review seeking review of the Bureau's July 2018 order denying their petition to intervene in DHS's action seeking to revoke the Center's license for 2016-17.

While the litigation pertinent to the Center's application for 2016-17 was ongoing, the Center filed its application for 2018-19. When DHS failed to respond, the Center filed a January 2018 petition for review in the nature of mandamus and special relief against the Secretary and DHS at No. 13 M.D. 2018 seeking an order compelling DHS to act on the 2018-19 application and a request for a preliminary injunction. Ultimately, Judge Brobson issued a January 2018 order staying the action pending disposition of the administrative appeal involving the 2016-17 application.

In December 2019, this Court issued orders providing that Senior Judge Leadbetter's February 2017 stay in No. 8 M.D. 2017 and Judge Brobson's January 2018 stay in No. 13 M.D. 2018 shall remain in effect. In addition, we directed that the next status reports be submitted within ten days of the Bureau's decision addressing DHS's January 2018 order or by March 9, 2020, whichever occurs earlier.

Returning to the present appeal, we consider three issues with respect to DHS's order denying Petitioners' petition to intervene in the license revocation appeal pertaining to the 2016-17 application: (1) whether we should dismiss the petition for review as moot; (2) whether the petition for review of an order denying intervention falls within the definition of an appealable collateral order; and (3) whether the Bureau erred in denying the petition to intervene.

## I. Mootness

A court may dismiss a case for mootness at any time "because generally, an actual case or controversy must exist at all stages of the judicial or administrative process." *Pa. Liquor Control Bd. v. Dentici*, 542 A.2d 229, 230 (Pa. Cmwlth. 1988). An actual case or controversy exists when there is a real legal controversy that is not hypothetical; the legal controversy affects an individual in a concrete manner thereby providing the factual predicate for a reasoned adjudication; and the legal controversy has sufficiently adverse parties. *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004). When an intervening change in the facts of a case or the applicable law deprives the litigant of a necessary stake in the outcome, a case can become moot even after a lawsuit has commenced. *In re Gross*, 382 A.2d 116, 119-20 (Pa. 1978). Mootness "stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court

lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014).

Exceptions to the mootness doctrine include matters capable of repetition but likely to evade review, matters of great public importance, and matters involving an issue that is important to the public interest or where a party will suffer some detriment without a court decision. *Pilchesky v. Lackawanna Cty.*, 88 A.3d 954, 964-65 (Pa. 2014). We conclude that the instant case presents a classic situation invoking all three exceptions.

## A. Capable of repetition but likely to evade review

With respect to the first exception, we acknowledge that detainees come and go in relatively short spans of time thereby rendering it difficult to maintain petitioners who are current detainees and to litigate their claims. To that end, because the average length of detention is several weeks, there generally is little time for counsel to prepare petitions for each currently detained family, much less enough time for the litigation of appeals. *See Commonwealth v. Baker*, 766 A.2d 328, 330 n.4 (Pa. 2001) (where appellee was charged with indirect criminal contempt of a protection from abuse order and the term of his sentence had expired by the time the appeal reached the court, the court still decided the case citing the issue's (1) capability of repetition yet likelihood to evade review due to the relatively short length of the maximum sentence; and (2) significant public importance; *Janet D. v. Carros*, 362 A.2d 1060, 1069 (Pa. Super. 1976) (in cases where children were not permitted to be kept in shelter facilities for more than three months and the time for fact-finding and appellate review would exceed that time, issues were capable of repetition yet likely to evade review).

7

In addition, notwithstanding Detainees' respective releases, we understand that their immigration proceedings could be ongoing such that they remain subject to the risk of re-detention at the Center. This risk represents a real legal controversy that affects them in a concrete manner such that it provides a factual base for a reasoned adjudication. *Mistich*, 863 A.2d at 119. Moreover, we acknowledge that other families remain detained at the Center and that more will be detained in the future. *See Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cty.*, 32 A.3d 639, 651-52 (Pa. 2011) (even though none of the original supervisors remained in their posts, case fell within mootness exception, in part, because successors similarly could face incarceration).

**B. Matter of great public importance**

As noted, the Center is only one of three such facilities in the country thereby invoking two subjects of great public importance: children and immigration. With respect to children, we attribute great public importance to the protection of the health, safety and well-being of children housed in a facility located and licensed in the Commonwealth, regardless of the children's immigration status and whether the facility meets state licensing requirements. *See Janet D.*, 360 A.2d at 1070 (holding that the quality of care of a "deprived child"[7] committed to a juvenile facility is an issue of great public importance). Additionally, we afford great public importance to issues relating to immigration. Of course, we are limited here to appellate review over DHS's licensure action against a facility licensed to operate as one type under specific state regulations but operating as another type under an intergovernmental agreement. *See Commonwealth v. Nava*, 966 A.2d 630, 633 (Pa.

---

[7] A "deprived child" is one without proper parental care, control, subsistence, or education who has been abandoned by his parents, guardian, or other custodian or lacks such a person. *Janet D.*, 360 A.2d at 1062 n.1.

Super. 2009) (holding that "[t]he scope of state court authority over immigrants is of local, state, and national importance").

In addition, we find persuasive cases where we applied the exceptions to the mootness doctrine to situations where the faces of the individuals affected changed but the gravity of the issues remained. *E.g.*, *Mifflin Cty. Sch. Dist. v. Stewart by Stewart*, 503 A.2d 1012 (Pa. Cmwlth. 1986) (although the matter of treatment of a student who had since graduated was moot, issue was of public importance due to potential impact on other students in the Commonwealth); and *Se. Pa. Transp. Auth. [SEPTA] v. Weiner*, 426 A.2d 191 (Pa. Cmwlth. 1981) (although SEPTA had already implemented higher fares, the issues raised were of public importance and should be resolved to avoid future controversy).

**C. Matter involving an issue where a party will suffer some detriment without a court decision**

Petitioners maintain that Detainees will suffer detriment absent court review because they face the very real threat of re-detention and will be bound by any decision. In addition, Petitioners contend that the controversy extends beyond Detainees in that children and adults will continue to be detained at the Center under allegedly unlawful conditions. *See Rivera v. Pa. Dep't of Corrs.*, 837 A.2d 525, 528 (Pa. Super. 2003) ("because Appellants could be returned to the [long[-]term segregation unit] and, more importantly, because other prisoners remain [there], an issue with regard to the conditions of confinement . . . is capable of repetition."). Aldea maintains that it will suffer detriment without court review due to its limited resources and the challenges to providing counsel in a detainment setting. To that end, it asserts a detriment of added expenditures of limited time, resources, and personnel.

9

We acknowledge the potential for detriment without a court decision. This Court has considered numerous actions involving the Center, at least two of which remain active (Nos. 8 M.D. 2017 and 13 M.D. 2018).

## II. Appealable Collateral Order

An appeal of an order denying intervention may fall within the definition of an appealable collateral order pursuant to Rule 313(b) of the Pennsylvania Rules of Appellate Procedure. *Support Ctr. for Child Advocates v. Dep't of Human Servs.*, 189 A.3d 497 (Pa. Cmwlth. 2018). Rule 313(b) restates the traditional three-pronged test for determining if an order is appealable under that doctrine:

> (1) the order is separable from and collateral to the main cause of action;
>
> (2) the right involved is too important to be denied review; and
>
> (3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313(b). In applying the doctrine, courts have required the proponent to satisfy all three prongs. *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018). Additionally, our Supreme Court has instructed that the doctrine be construed narrowly and that each one of the three prongs be clearly present. *Id.*

### A. Order separable from and collateral to the main cause of action

In considering the first prong, we have held that an order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and can be resolved without an analysis of the merits of the underlying dispute. *Support Ctr. For Child Advocates*, 189 A.3d at 500. Petitioners maintain that the order denying their petition to intervene meets this prong because their

eligibility to intervene turns on whether their interests are directly affected and adequately represented by existing parties and whether their intervention is in the public interest, all of which is separable and collateral to the pending license revocation appeal.

The issue of whether Petitioners are entitled to intervenor status is a conceptually distinct legal question with limited bearing on the central issues within the license revocation action. The licensure issues are whether the non-renewal of the Center's license was proper based on a failure to comport with the licensing standards applicable to child residential facilities by housing adults with children and whether DHS can be estopped from not renewing the license because it permitted the Center to operate that way for years. *See Support Ctr. for Child Advocates* (holding that guardian ad litem's intervenor status was distinct from the central issue within the expunction action–whether substantial evidence supported the indicated report of child abuse). Accordingly, Petitioners met the first prong.

## B. Right involved too important to be denied review

The Center acknowledges that there is a public interest in ensuring that facilities are licensed appropriately based on the services provided, that they operate as licensed, and that they provide for the health, well-being, and safety of the residents. However, it maintains that the present license revocation appeal is not the result of violations but instead pertains to whether the Center is operating pursuant to its license as a child residential facility. Pursuant to that logic, the Center maintains that because the appeal nominally does not relate to violations, Petitioners' allegations as to inadequate and/or inappropriate treatment are not at issue and, therefore, not subject to an analysis as to whether such allegations invoke rights too important to be denied review.

We disagree with the Center that the license revocation appeal does not encompass "violations." It is beyond dispute that what DHS licensed as a child residential facility is operating as a multi-generational housing facility.[8] Logically, a facility that is not operating pursuant to its license may be presumed to be in violation of regulations providing for the health, well-being, and safety of the *intended* residents. In that respect, Petitioners' grievances are intertwined with the identity of the Center. Notably, all of the relevant regulations pertain to children. The fact that children are housed with adults, regardless of the fact that some individuals are related, does not negate the fact that the Center nominally is subject to regulations that are applicable to children but inapplicable to a mixed-age population. Accordingly, as we determined above with respect to great public importance, we similarly determine that Petitioners' rights are too important to be denied review.

**C. Question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost**

The Center argues that Petitioners' claims will not be irreparably lost if they are not permitted to intervene because they are seeking license revocation in order to effectuate their release from the Center and, therefore, their efforts constitute a collateral attack on their immigration proceedings. We disagree. As Petitioners assert, their petition to intervene pertains to the legality of the care and custody of children under the laws of the Commonwealth, not the available relief under immigration laws. To that end, the people most affected by the outcome of the case,

---

[8] By way of illustration, the intergovernmental agreement with an effective date of January 1, 2003, states provisional billing rates for secure unaccompanied juveniles, non-secure unaccompanied juveniles, alien family groups, and an "above 60 rate." (Agreement No. ACB-O-H-0017; S.R.R. at 23.)

12

children detained at the Center or at risk for detention or re-detention, would lose their opportunity to be heard absent intervention because these proceedings already have lasted longer than the period any child has been detained at the Center.

## III. Intervention

Generally, Petitioners maintain that the Bureau abused its discretion in summarily denying their petition to intervene without reviewing the record or the hundreds of pages of evidence allegedly supporting their petition. Additionally, they argue that the Bureau violated their right to due process by failing to acknowledge receipt of their petition in a timely manner and by failing to notify them in writing when it summarily denied their petition.

**Factors necessary to establish right to intervene**

In pertinent part, the General Rules of Administrative Practice and Procedure (GRAPP) provides the following with respect to intervention:

> **(a) Persons.** A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:
>
> . . . .
>
> **(2)** An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have an interest: consumers, customers or other patrons served by the applicant or respondent; holders of securities of the applicant or respondent; employes of the applicant or respondent; competitors of the applicant or respondent.
>
> **(3)** Other interest of such nature that participation of the petitioner may be in the public interest.

1 Pa. Code § 35.28(a)(2) and (3). Granting or denying a petition to intervene is within the sound discretion of the agency involved and should not be disturbed absent a manifest abuse of discretion. *Wilkinsburg Educ. Ass'n v. Sch. Dist. of Wilkinsburg*, 690 A.2d 1252 (Pa. Cmwlth. 1996).

**Direct interest**

The Center contends that the intervention-related rights alleged by Petitioners contain all of the same ingredients as the license revocation appeal such that they have failed to assert a separate right or interest in the underlying dispute. Specifically, the Center maintains that Petitioners' petition pertains to their right to be housed in a facility that provides for their health and safety, which is the identical interest that DHS asserts in the license revocation case. We disagree, finding merit in Detainees' contention that DHS does not adequately represent their direct interest. First, in late 2015 DHS determined that the Center was operating outside its authorization but nonetheless has continually agreed to allow the Center to continue to operate. Given that pattern, Petitioners can persuasively argue that DHS is not adequately representing their interests. Moreover, Detainees are the ones personally suffering any negative consequences to their health, safety, and well-being posed by the Center operating contrary to law such that their direct interest could diverge from DHS's more general interest in confirming that the Center operates lawfully. In other words, the personal interests of Detainees in their *individual* welfare could diverge from the more general interest of DHS in *public* welfare.

By way of illustration, this Court in *Larock v. Sugarloaf Township Zoning Hearing Board*, 740 A.2d 308, 314 (Pa. Cmwlth. 1999), reversed the trial court's denial of the petition to intervene of several residents opposing a quarry where the governmental interests could diverge from that of the residents.

14

Specifically, we noted that the residents' goal was to prohibit the quarry entirely whereas the governmental goals were to protect the township's interests, which at some point could include settlement of the matter thereby permitting the quarry. "In other words, if it is possibly only a matter of time until the quarry comes in anyway, it would be in the [t]ownship's interest to have an opportunity to impose conditions favorable to [it]." *Id. See also Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 958 (3d Cir. 2012) (agency may not be an adequate representative of individual's interest where agency's views are colored by public welfare rather than the more personal view of a proposed intervenor); and *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133 (3d Cir. 1982) (proposed intervenor's interests may be sufficiently different from representative such that it cannot give his interests proper attention, representative and opposing party may have colluded, or representative may not be diligent in pursuing litigation).[9]

Finally, we reject the Center's assertion that Petitioners, via their petition to intervene, should be precluded from presenting any evidence regarding their treatment at the Center. As we concluded above, the very fact that the Center is a *de facto* multi-generational facility and not a *de jure* child residential facility mandates that it is appropriate, at a minimum, to permit them to present evidence to augment DHS's case that being housed with adult individuals in contravention of the Center's specific license is inherently problematic. As noted, a certificate permits a legal entity to operate a *specific* type of facility in accordance with *appropriate* departmental program license or approval regulations. 55 Pa. Code § 20.4. A certificate does not permit a legal entity to operate whatever type of facility that it contracts to operate and to house individuals other than those permitted under

_____

[9] As noted, DHS chose not to file a brief or participate at oral argument in the present appeal.

15

the specific certificate. In this respect, Petitioners would be complementing and supporting DHS's position that the Center is operating outside of its certificate, which is at the heart of the license revocation appeal. We caution, however, that Petitioners' evidence must be limited to the issues raised in the appeal from DHS's revocation of the Center's license, i.e., whether the Center is operating outside its certificate.

**Public interest**

Petitioners assert that their intervention is in the public interest, which was touched upon above with respect to mootness and rights too important to be denied review. Turning to Aldea, we note that its direct interest is not tantamount to that of Detainees in that it would not be bound by DHS's decision in quite the same way. However, Aldea's participation would be in the public interest as a nonprofit organization aiding detainees. *See* 1 Pa. Code § 35.28(3) (petitioner's interest in intervention may consist of "[o]ther interest of such nature that participation . . . may be in the public interest.").

**IV. Conclusion**

Accordingly, we reverse the Bureau's order and remand this matter to the Bureau with directions to permit Petitioners to intervene consistent with the foregoing opinion.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D. G. A., R.D.A.M., G. C. G., R. N. and :
Aldea-The People's Justice Center, :
                        Petitioners :
                                       :
              v. :  No. 1059 C.D. 2018
                                         :
Department of Human Services, :
                        Respondent :

# **O R D E R**

AND NOW, this 21st day of January, 2020, we hereby REVERSE the order of the Department of Human Services, Bureau of Hearings and Appeals (Bureau), and REMAND this matter to the Bureau with directions to permit Petitioners to intervene within the parameters described in the foregoing opinion.

Jurisdiction relinquished.

 

                                        _____

                                          **BONNIE BRIGANCE LEADBETTER,**
                                          Senior Judge