# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dwayne A. Peifer and D&K Living
Trust

        v.

Colerain Township Zoning Hearing
Board

        v.

Colerain Township

Appeal of: Chester Water Authority

:
:
:
:
:    No. 31 C.D. 2023
:    ARGUED: June 5, 2023
:
:
:
:
:
:
:
:
:
:

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: July 12, 2023**

Chester Water Authority (CWA) appeals from an order of the Court of Common Pleas of Lancaster County denying CWA's application for leave to intervene in a land use appeal filed by Dwayne A. Peifer and D&K Living Trust[1] (collectively, Peifer).[2] Also before the Court is Peifer's application to quash the

---

[1] D&K Living Trust owns the subject property. (Sept. 16, 2021 Zoning Hearing Board "ZHB" Decision, Finding of Fact "F.F." No. 2.)

[2] In the order, the trial court also granted Peifer's motion to quash and strike from the record CWA's reply brief and amended reply brief.

instant appeal as interlocutory.[3]  We deny Peifer's application to quash the instant appeal and reverse the trial court's order denying CWA's application for leave to intervene.

## I. Background

In 2021, Peifer filed an application for a special exception to operate a concentrated animal feeding operation (CAFO), specifically an industrial duck farm, in Colerain Township's agricultural zoning district.  Comprising approximately sixty acres, the subject property is located at 510 Mt. Eden Road, Kirkwood, Pennsylvania.  The property is enrolled in the Township's agricultural security area and is permanently preserved as a farm through a conservation easement.

The proposed duck barn would measure 63 feet in width by 640 feet in length, would be located at least 75 feet from any property line, and would house approximately 40,000 ducks at its maximum capacity.[4]  (Sept. 16, 2021 Zoning Hearing Board "ZHB" Decision, Finding of Fact "F.F." Nos. 5, 7, and 17.)  The ducks' daily average water consumption would be approximately 3500 gallons, which equates to a well producing 2.43 gallons per minute and is comparable to approximately 9 single-family homes. (F.F. No. 31.)  Every month, one truck would deliver baby ducks. (F.F. No. 30.)  Every four weeks, there would be four tractor-trailer trucks that would load ducks and transport them to Harrisburg for processing.  There also would be feed trucks entering and exiting the property. (*Id*.)  "Mortalities [would] be handled using an industry standard incinerator system." (F.F. No. 32.)

---

[3] On April 4, 2023, this Court granted CWA's application for expedited relief requesting an expedited schedule for briefing and argument and listed Peifer's application to quash with the merits of the appeal.  On May 3, 2023, the ZHB filed a notice of non-participation in the above-captioned appeal.

[4] Five thousand ducks necessitate a CAFO permit.  (F.F. No. 28.)

The duck manure would be scraped to a point where it would be conveyed underground to an outside concrete manure storage structure, measuring 105 feet in diameter and 16 feet deep, that would be located at least 200 feet from any property line. (F.F. Nos. 8, 10, 15, and 17.) Although the capacity for the manure structure would be approximately 971,600 gallons, the annual manure generated would be approximately only 483,000 gallons. (F.F. Nos. 10 and 11.) The structure would be pumped out in the spring and fall, with the wet manure applied two times per year as a natural fertilizer to the surface of the land in accordance with Peifer's nutrient management plan. (F.F. Nos. 13, 20, and 21.) The manure would be applied at approximately 4000 gallons per acre and would not be spread within 100 feet of any well or stream. (F.F. Nos. 18 and 19.) "In order to help mitigate odors associated with the storage and land application of manure, a natural enzyme called 'pit king' [would] be added to the manure in the manure storage structure." (F.F. No. 14.)

As for CWA's interest, the proposed duck farm is in close proximity to CWA's Octoraro Reservoir providing drinking water to the City of Chester, Southern Chester County, and Western Delaware County. (F.F. No. 38.) CWA also owns property across from the subject property. (Dec. 8, 2022, Trial Ct. Op. at 8.) Appearing before the ZHB, a representative for CWA submitted a lengthy letter from CWA's chief operations officer and facilities supervisor copiously outlining why CWA believed that the ZHB should deny Peifer's application for a special exception *and* stating that "CWA is a person affected by the application . . . and requests recognition as a party in this proceeding." (Aug. 11, 2021 Hr'g, CWA Ex. J; Reproduced Record "R.R." at 369a.) The representative offered to read the letter into the record but the ZHB's counsel stated that the ZHB had the letter and

requested that it be marked and made part of the record. He further stated that the representative could pass it out to community members present at the hearing. (*Id.*, Notes of Testimony "N.T." at 77; R.R. at 298a.) It does not appear that the ZHB acted on CWA's request to be accorded party status.

In a September 2021 written decision denying Peifer's application, the ZHB concluded that the subject property was not an appropriate location for the proposed use. The ZHB found that the proposed duck barn would be located in close vicinity to a number of neighboring residences and on land sloping to nearby Gables Run, which flows to Octoraro Reservoir. (F.F. Nos. 33 and 37.) In addition, the ZHB determined that the proposed use would adversely affect the zoning district because the odor associated with manure and the spreading thereof would adversely affect the neighboring property owners as well as substantially injure or detract from the use of neighboring properties and from the character of the neighborhood. (F.F. Nos. 34 and 35.) Finally, the ZHB concluded that Peifer failed to prove that the proposed use would be safely operated and that the neighboring properties would be safeguarded from stormwater runoff and pollution. (F.F. No. 39.)

Peifer appealed and the Township filed a praecipe for intervention as of right to represent the ZHB. In November 2021, CWA filed an application for leave to intervene in Peifer's land use appeal. Ultimately, the trial court denied CWA's application and ruled that the Township and the ZHB could adequately represent CWA's interests. In January 2023, CWA appealed from the trial court's order denying CWA's application for leave to intervene. In March 2023, Peifer filed an application to quash CWA's appeal as interlocutory. At this time, we consider both the merits of the appeal and Peifer's application to quash.

4

## II. Peifer's Application to Quash CWA's Appeal as Interlocutory

An order denying the right to intervene is no longer deemed a final order under Pennsylvania Rule of Appellate Procedure 341. *Fayette Cnty. Off. of Plan., Zoning & Cmty. Dev. v. Fayette Cnty. Zoning Hearing Bd.*, 981 A.2d 336, 340 (Pa. Cmwlth. 2009). However, an appeal may be taken as of right from a trial court's collateral order. Pa.R.A.P. 313(a). A collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). All three criteria must be satisfied in order for the doctrine to apply and the doctrine must be narrowly construed in order to avoid piecemeal determinations and protracted litigation. *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015). Peifer concedes that the first criterion for application of the collateral order doctrine is satisfied but argues that CWA cannot meet the second and third criteria.

The second criterion requires that the right involved be too important to be denied review. CWA is both an adjacent landowner and the owner of the directly affected Octoraro Reservoir. As the trial court concluded, CWA established a "legally enforceable interest" under Pennsylvania Rule of Civil Procedure 2327(4) setting forth who may intervene. Pennsylvania courts have long recognized that property owners in the immediate vicinity of property involved in zoning litigation have the requisite interest to become intervenors. *Wexford Sci. and Tech., LLC v. City of Pittsburgh Zoning Bd. of Adjustment*, 260 A.3d 316, 325-26 (Pa. Cmwlth. 2021); *Twp. of Radnor v. Radnor Recreational, LLC.*, 859 A.2d 1, 5 (Pa. Cmwlth. 2004); *Larock v. Sugarloaf Twp. Zoning Hearing Bd.*, 740 A.2d 308 (Pa. Cmwlth.

1999); *Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors*, 411 A.2d 1263, 1265 (Pa. Cmwlth. 1980); *Schatz v. Zoning Hearing Bd. of Upper Dublin Twp.*, 343 A.2d 90, 91-92 (Pa. Cmwlth. 1975). In this respect, we reject Peifer's argument that CWA, as an adjacent property owner, had to articulate a legally enforceable interest for intervention that may be affected by Peifer's land use appeal. The law provides that a property owner's proximity to the subject property is sufficient to afford it standing to appeal without any necessity for that owner to declare any plans for its adjacent property.

In addition, CWA's appeal also implicates rights under the Environmental Rights Amendment (ERA) providing that all Pennsylvanians have

> a right to clean air, *pure water*, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27 (emphasis added). The ERA imposes fiduciary duties on the Commonwealth and all state, county and local agencies, including CWA, "to prevent and remedy the degradation, diminution, or depletion of our public natural resources." *Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 932 (Pa. 2017).

However, Peifer asserts that CWA's purported interest in protecting its water supply is not too important to be denied review because it is obviated by the Commonwealth's comprehensive regulation of the proposed use for the specific purpose of protecting ground and surface water as well as other environmental resources. Peifer cites regulation by the State Conservation Commission under the

6

Nutrient Management Act[5] and by the Department of Environmental Protection under The Clean Streams Law.[6]

Peifer's position is without merit. The fact that other agencies may also have a duty to protect the environment does not negate CWA's duty, let alone obviate its very specific interest in protecting the quality of drinking water in its own reservoir. As the trial court concluded, CWA has a legally enforceable interest as a property owner in the immediate vicinity of the proposed use. In addition, in ascertaining whether the property interests of landowners seeking to intervene were too important to be denied review, this Court observed:

> Every person has the right to the natural, proper, and profitable use of his or her own land. *Implicit then is the right to protect one's property from harm, whether it be in the form of decreased valuation, insufficient water supply, excessive dust, noise, pollution, or some other cause.* [Emphasis in original.]

*Wexford*, 260 A.3d at 321 (quoting *Larock*, 740 A.2d at 312). Accordingly, CWA satisfied the second criterion.

The third criterion requires that the question presented is such that if review is postponed until final judgment, the claim will be irreparably lost. CWA's failure to secure intervenor status would not only prevent it from asserting its interests in the land use appeal in the trial court, but it would also cause it to lose its ability to file an appeal from that court's final order. *In re Barnes Found.*, 871 A.2d 792, 794-95 (Pa. 2005); Pa.R.A.P. 501 (authorizing appeals by "any party who is aggrieved by an appealable order"). The underlying purpose behind the general prohibition of interlocutory appeals is to require that all issues be decided following

---

[5] 3 Pa.C.S. §§ 501-22.

[6] Act of June 22, 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

the final order rather than having issues be appealed in piecemeal fashion. Here, however, CWA would never be able to appeal the denial of its intervention if the instant appeal is quashed because, absent party status, it would be unable to appeal from the trial court's final order.

In addition, CWA's claim would be irreparably lost because it would not have the same remedy available, prohibition of the proposed use, and would be relegated to post-contamination damages and clean-up remedies. In support, CWA cites *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 962-63 (Pa. 2013) (plurality), holding that the ERA "permit[s] not only reactive but also anticipatory protection of the environment" before natural resources are degraded, diminished, or depleted. In other words, CWA asserts that its appeal does not involve a situation where it could obtain the same remedy in a separate action or pursue other avenues by which it could obtain a remedy and/or protect its interests. *Compare Watson v. City of Phila.*, 665 A.2d 1315, 1318 (Pa. Cmwlth. 1995) (unappealable interlocutory order because if attorney were not permitted to appeal the denial of his petition to intervene in his former client's whistleblower case, attorney could recover his attorney's fees through a direct action against his former client). The third criterion has been satisfied.

All three criteria necessary for application of the collateral order doctrine having been satisfied, Peifer's application to quash the instant appeal is denied.

**III. Trial Court's Denial of CWA's Application for Leave to Intervene**

Having determined that the trial court's order denying CWA's application for leave to intervene constitutes a collateral order, we now address the merits of the trial court's denial of CWA's application for leave to intervene. The

8

grant or denial of intervention is committed to the trial court's discretion and will not be set aside on appeal absent an abuse of such discretion. *Wexford*, 260 A.3d at 325.

Pennsylvania Rule of Civil Procedure 2327 provides as follows as to who may intervene:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
>
> (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or
>
> (3) such person could have been named as an original party in the action or could have been joined therein; or
>
> (4) *the determination of such action may affect any legally enforceable interest of such person* whether or not such person may be bound by a judgment in the action.

Pa. R.Civ.P. 2327 (emphasis added).

Pennsylvania Rule of Civil Procedure 2329, the corollary rule on intervention, sets forth the reasons for denying intervention. Rule 2329 provides:

> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

9

> (1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

> (2) *the interest of the petitioner is already adequately represented*; or

> (3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa. R.Civ.P. 2329 (emphasis added).

"[A] grant of intervention is mandatory where the intervenor satisfies one of the four bases set forth in Rule [ ] 2327 unless there exists a basis for refusal under Rule [ ] 2329." *Allegheny Reprod. Health Ctr. v. Pa. Dep't Hum. Servs.*, 225 A.3d 902, 908 (Pa. Cmwlth. 2020). Here, the trial court found that Rule 2327 was satisfied because CWA had a legally enforceable and sufficient interest but denied intervention on the basis that its interest was adequately represented by the ZHB and the Township.

As an initial matter, CWA asserts that the trial court did not state unambiguously that CWA's interest is already adequately represented by the Township and the ZHB. However, this is implicit in the trial court's analysis:

> The ZHB's decision specifically states that [Peifer's] proposed duck farm is located in close vicinity to Liberty Lane and acknowledged concern regarding [Peifer's] land sloping into Gables Run which flows into CWA's Octoraro Reservoir. Further, the ZHB found that [Peifer] failed to prove that: the proposed duck farm would be safely operated; the neighboring properties would be adequately safeguarded from the stormwater runoff and pollution and the proposed duck farm would not substantially injure or detract from the use of neighboring properties or from the character of the neighborhood. Thus, the ZHB found that [Peifer] did not comply with the

10

requirements of § 15.03.01 of the [Colerain Township Zoning] Ordinance and denied [the] request for a special exception. *Instantly, the Township and the ZHB, which apply and enforce the Ordinance and are both parties to the instant land use appeal, have thus provided for the protection of the interests advanced by CWA; thus, CWA's [application for leave to intervene] will be denied.*

(Dec. 8, 2022 Trial Ct. Op. at 12) (emphasis added).

Rule 2329(2) requires not just that the intervenor's interest be shared by an existing party, but that the existing party adequately and effectively represent that interest throughout the entire course of the litigation. *See Wexford*, 260 A.3d at 325. CWA's interests are distinct from, much broader than, and not fully aligned with the interests of the Township and the ZHB. CWA provides water service in 33 municipalities across 3 counties, whereas the Township and the ZHB represent only 1 municipality. In addition, any runoff from the proposed duck farm would go into Octoraro Reservoir, which CWA owns and uses to provide water service. Although the Township and the ZHB were concerned about the water, they also considered the odor from the proposed duck farm and character of the neighborhood. In addition, CWA has greater expertise and resources regarding water quality issues than do the Township and the ZHB, putting CWA in a more effective position to litigate the critical safety issues at stake here. In other words, CWA is not the average proposed intervenor.

Furthermore, it is not clear that the Township and the ZHB can adequately represent CWA's interests in the land use appeal. CWA is affirmatively asserting an interest in the land use appeal premised on the ERA whereas the Township and the ZHB are not. While it is true that a municipality in passing a zoning ordinance is bound by the ERA and must consider all of the attendant

11

protected rights,[7] CWA's primary purpose is to ensure the quality of the water in the Octoraro Reservoir and provide adequate and safe drinking water. Consequently, even though all three entities must abide by the ERA, their respective decisions as to how to do so may take different forms and not manifest in the same way. In addition, CWA's goal is to prevent the development of a duck farm altogether to protect the water supply whereas the others' interests are focused on defending the ZHB's assessment and application of the criteria for a special exception to Peifer's current proposal. Their goals are not necessarily to prevent the use under all circumstances. This difference between the players' respective interests may be analogous to *Wexford*, 260 A.3d at 325, where "the interests of homeowners and the local government [vis-à-vis a proposed thirteen-story building] do not necessarily align," and *Larock*, 740 A.2d at 314, where the residents were entitled to intervene because their goal was to prohibit the quarry whereas the goals of the zoning hearing board and the township were to protect the interests of the township, which at some point could include settlement thereby allowing the quarry.

Finally, we address CWA's argument that the trial court erred in determining that the Township and the ZHB could adequately represent CWA's interest without holding a hearing. The trial court determined that a hearing was not necessary because the record provided it with an adequate basis upon which to exercise its discretion. As noted, Rule 2329 generally requires a hearing. *See* Pa. R.Civ.P. 2329 (providing that "[u]pon the filing of the petition and after hearing, . . . the court, if the allegations of the petition have been established and are found to

---

[7] *Frederick v. Allegheny Twp. Zoning Hearing Bd.*, 196 A.3d 677, 695 (Pa. Cmwlth. 2018). In addition, a municipality must balance "the interest of landowners in the use and enjoyment of their property with the public health, safety and welfare of the community when it enacts land use regulation." *Id*. at 700 [citing *In re Realen Valley Forge Greenes Assoc.*, 838 A.2d 718, 727-28 (Pa. Cmwlth. 2003)].

12

be sufficient, shall enter an order allowing intervention"). However, there are instances where a hearing may not be required, such as: 1) where it is apparent on the face of the petition that the criteria for intervention have been met;[8] and 2) where the record provides an adequate basis upon which a trial court may exercise discretion without a hearing, *e.g.*, the record is sufficient to decide the petition.[9] Nonetheless, case law generally provides that a hearing is preferable. *E.g., Sunny Farms Ltd. v. N. Codorus Twp.*, 474 A.2d 56, 62 (Pa. Cmwlth. 1984) (although the record provided a sufficient basis upon which the trial court could exercise its discretion to permit intervention, a hearing would have been preferable).

Here, it is clear that the Township and the ZHB cannot adequately and effectively support CWA's interest in the land use appeal. Consequently, we decline in the interest of judicial economy to vacate the trial court's order and remand for a hearing. However, we do not condone the trial court's decision not to hold a hearing on intervention and encourage hearings in virtually all situations. Otherwise, it will be virtually impossible to ascertain whether the proposed intervenor has satisfied the allegations of the application for leave to intervene and whether those allegations are sufficient to permit intervention.

## IV. Conclusion

Accordingly, we deny Peifer's application to quash CWA's appeal as interlocutory because CWA met the criteria for application of the collateral order doctrine. In addition, we reverse the trial court's order denying CWA's application

---

[8] *Chairge v. Exeter Borough Zoning Hearing Bd.*, 616 A.2d 1057 (Pa. Cmwlth. 1992); *Santangelo Hauling, Inc. v. Montgomery Cnty.*, 479 A.2d 88 (Pa. Cmwlth. 1984).

[9] *SBA Towers, IX, LLC v. Unity Twp. Zoning Hearing Bd.*, 179 A.3d 652, 664 (Pa. Cmwlth. 2018); *Sunny Farms Ltd. v. N. Codorus Twp.*, 474 A.2d 56, 81 (Pa. Cmwlth. 1984).

for leave to intervene because the Township and ZHB cannot adequately and effectively represent CWA's interest in the land use appeal.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dwayne A. Peifer and D&K Living Trust | : : : | |
| v. | : : | No. 31 C.D. 2023 |
| Colerain Township Zoning Hearing Board | : : : : | |
| v. | : : | |
| Colerain Township | : : | |
| Appeal of: Chester Water Authority | : | |

## **O R D E R**

AND NOW, this 12th day of July, 2023, Dwayne A. Peifer and D&K Living Trust's application to quash the above-captioned appeal is hereby DENIED.

Further, the order of the Court of Common Pleas of Lancaster County denying Chester Water Authority's application for leave to intervene in the land use appeal is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita